IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIGA LOGISTICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-14-480 |
| | § | |
| THOMAS E. PEREZ, SECRETARY | § | |
| OF LABOR, UNITED STATES | § | |
| DEPARTMENT OF LABOR, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Federal Defendant's Motion to Dismiss and Memorandum in Support (Document No. 14). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

## I. BACKGROUND

This case arises out of the Department of Labor's (the "DOL") investigation into Plaintiff Tiga Logistics, LLC's ("Tiga") classification of its drivers and dispatchers under the Fair Labor Standards Act ("FLSA"). Tiga is a trucking company in the oil industry. It has historically classified its drivers as independent contractors and its dispatchers as salaried exempt employees. On August 20, 2013, the Wage and Hour Division of the DOL initiated an investigation into Tiga's

classification of its drivers and dispatchers. On February 20, 2014, the DOL investigator, Dante Wilson ("Wilson"), met with Tiga and its outside counsel for what he called a "final conference." During that meeting, Wilson informed Tiga it was in violation of the FLSA because the drivers should be classified as employees rather than independent contractors and the dispatchers were not salaried exempt employees. Tiga alleges Wilson informed Tiga that he had already orally reviewed the findings with his district manager and a U.S. Solicitor. The DOL contends the Assistant District Director ("ADD") who supervised Wilson during his investigation has never reviewed Wilson's file.

On February 26, 2014, Tiga filed the present action in this Court pursuant to the Administrative Procedures Act ("APA"), seeking a declaratory judgment that the drivers are properly classified as independent contractors. On May 27, 2014, the DOL filed a motion to dismiss on the basis of Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and lack of ripeness and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. STANDARD OF REVIEW

Motions filed pursuant to Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court. FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter

jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id.*

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than . . . 'labels and conclusions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most

favorable to the plaintiff.'" *In re Katrina Canal Breeches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

### III. LAW & ANALYSIS

Sovereign immunity protects the federal government from suit unless that immunity is waived. *Pena v. United States*, 157 F.3d 984, 986 (5th Cir. 1998). The APA, the statute under which Tiga has brought suit, waives sovereign immunity when an agency action is "made reviewable by statute" or is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Because the FLSA only explicitly allows employees and the Secretary of Labor to sue under the statute, Tiga, as an employer, must point to a "final agency action" to establish subject matter jurisdiction under the APA. *Gate Guard Servs. L.P. v. Solis*, No. V-10-91, 2011 WL 2784447, at *3 (S.D. Tex. July 12, 2011) (Rainey, J.) (citing 29 U.S.C. §§ 215–17).

4

To constitute a final agency action, two conditions must be satisfied. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). First, "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* (internal citations omitted). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178. Courts should consider finality in a "pragmatic" way. *Gate Guard*, 2011 WL 2784447, at *4 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

Tiga contends Wilson's findings during the final conference constitute a final agency action. To supports this contention, Tiga points to the declaration of Terry Taylor, one of Tiga's founders.[1] In his declaration, he states Wilson told the company he would "refer the matter to the DOL's district management who could hand the matter over to the Solicitor's office for enforcement" if Tiga disagreed with his findings.[2] Taylor states Wilson "never indicated that the DOL's district management could overturn his findings"[3] and in fact told Tiga he had already spoken to "the DOL's district management and a U.S. Solicitor" who had already

---

[1] *Plaintiff's Response to Federal Defendant's Motion to Dismiss*, Document No. 17, Exhibit 1 (*Declaration of Terry Taylor*) [hereinafter *Declaration of Terry Taylor*].

[2] *Declaration of Terry Taylor*, *supra* note 1, ¶ 11.

[3] *Declaration of Terry Taylor*, *supra* note 1, ¶ 11.

reviewed the findings.[4] Wilson also told Taylor directly it would cost Tiga a "'whole lot more money'" if it disagreed with his findings and fought the DOL.[5] According to Taylor, the DOL never indicated a review process was available to contest Wilson's findings during the time between the final conference and when Tiga filed suit.[6]

The DOL contends the final conference was not a final agency action because a review process did exist within the DOL to contest Wilson's findings. The DOL points to the declaration of Rebecca Hanks, the ADD who supervised Wilson during his investigation of Tiga.[7] In her declaration, Hanks explains the DOL procedure for an investigation under the FLSA.[8] According to Hanks, an investigation begins with an "initial conference," after which the investigator will conduct interviews, review records, and engage in "other fact-finding measures."[9] The investigator may discuss his ongoing investigation with the District Director or

---

[4] *Declaration of Terry Taylor, supra* note 1, ¶ 8.

[5] *Declaration of Terry Taylor, supra* note 1, ¶ 11.

[6] *Declaration of Terry Taylor, supra* note 1, ¶ 15.

[7] *Federal Defendant's Motion to Dismiss and Memorandum in Support*, Document No. 14, Exhibit 1 (*Declaration of Rebecca Hanks*) [hereinafter *Declaration of Rebecca Hanks*].

[8] *Declaration of Rebecca Hanks, supra* note 7 at 2.

[9] *Declaration of Rebecca Hanks, supra* note 7, ¶ 7.

the supervising ADD as the need arises.[10] At the end of the fact-finding stage, the investigator will discuss his findings with the employer at a "final conference."[11] Hanks states a review by the assigned ADD, which could potentially overturn the investigator's findings, and a "second-level conference" with the employer, if the ADD agrees with the findings, are available if an employer disagrees with the investigator's findings.[12] In this case, Hanks states she did not receive Wilson's investigation file nor did she review or approve his findings before Tiga filed suit.[13] The "Field Operations Handbook" of the DOL includes a section that describes a similar review process by the "DD" "to determine the accuracy and adequacy of the factual development in each case....The DD may direct that further action be taken where necessary before final acceptance of investigation reports."[14]

In *Gate Guard*, where a final agency action was found based on statements made during the final conference, the court found "the DOL has failed to provide any evidence that [the employer] could have administratively appealed these

---

[10] *Declaration of Rebecca Hanks, supra* note 7, ¶ 7.

[11] *Declaration of Rebecca Hanks, supra* note 7, ¶ 8.

[12] *Declaration of Rebecca Hanks, supra* note 7, ¶¶ 8, 9.

[13] *Declaration of Rebecca Hanks, supra* note 7, ¶ 11.

[14] *Federal Defendant's Motion to Dismiss and Memorandum in Support*, Document No. 14, Exhibit 2 at 1 (*Field Operations Handbook § 53d00 (2002)*).

determinations before filing its Declaratory Judgment Action, nor has the DOL even alleged that further administrative proceedings were contemplated." 2011 WL 2784447, at *6. The court contrasted this dearth of evidence to "'[a]n affidavit by the agency head–not a mere argument by its court counsel–that a matter is still under meaningful refinement and development.'" *Id.* (citing *National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 702 (D.C. Cir. 1971)). Such an affidavit would "'likely provide the element of tentativeness and reconsideration that should negative finality.'" *Id.*

Here, Wilson may not have competently explained the review procedure to Tiga. However, the DOL has provided evidence to show a process was in place for ADD Hanks to review the findings discussed at the final conference because Tiga disagreed with them. The DOL has also established ADD Hanks would have either overturned the findings or set up a "second-level conference" to discuss the findings again with Tiga before any enforcement. Finally, the DOL has shown this internal process was not complete at the time Tiga filed suit.[15] Because the findings explained during the final conference did not mark the consummation of the DOL's decision-making process, there was no final agency action before Tiga filed

---

[15] *See Media Gen. Operations Inc. v. Herman*, 152 F. Supp. 2d 1368, 1375 (S.D. Ga. 2001) (holding a DOL investigator's findings did not constitute a final agency action because they could be reviewed by an ADD and other administrators. The court based its holding on affidavits from a local ADD and Deputy Regional Administrator that detailed the review process and in spite of allegations from the employer that the investigator told the employer her decision was final.)

suit. Without a final agency action, this Court does not have subject matter jurisdiction pursuant to the ADA. Accordingly, Tiga's claims are dismissed without prejudice.

## IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Federal Defendant's Motion to Dismiss and Memorandum in Support (Document No. 14) is **GRANTED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, on this **27** day of March, 2015.

                                        DAVID HITTNER
                                        United States District Judge